UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA KUHN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>L'OREAL USA S/D, INC., et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-04021-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 48 |

Pending before the Court is Defendants' motion to dismiss (Dkt. No. 48 ("Mot.")) Plaintiff's Second Amended Complaint (the "SAC," Dkt. No. 32), for which briefing is complete. Dkt. Nos. 55 ("Opp."), 57 ("Reply"). For the reasons articulated below, the Court **GRANTS** Defendants' motion to dismiss the First Cause of Action (Strict Products Liability) with leave to amend. Plaintiff is required to differentiate which Defendant is the subject of Plaintiff's various allegations.[1]

## I. BACKGROUND

This is a products liability case in which Plaintiff Linda Kuhn ("Plaintiff") seeks to recover personal injury damages from Defendants based on an alleged explosion of a container of dry shampoo near Plaintiff's foot.

On May 5, 2017, Plaintiff's daughter purchased a container of Matrix Biolage Dry Shampoo at the San Francisco retail location of Defendant Ulta Salon, Cosmetics, & Fragrance, Inc. ("Ulta"). SAC at ¶ 10. On May 8, 2017, Plaintiff, a resident of Ohio, was visiting her daughter's apartment in San Francisco. *Id.* at ¶¶ 3, 10. Plaintiff contends that, while "standing in an area adjacent to the certain container of Matrix Biolage Dry Shampoo," the container exploded

---

[1] The Court finds this matter appropriate for disposition without oral argument, and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

causing injury to Plaintiff. *Id.* at ¶ 21. Plaintiff contends that the container was "unused and in the same condition as at the time of purchase." *Id.* at ¶ 10. According to Plaintiff, the resulting damages exceed $75,000. *Id.* at ¶ 9.

On May 3, 2019, Plaintiff filed this action in California State Superior Court. *See* Dkt. No. 1 at 10. On July 12, 2019, Defendants removed this action to this Court based on diversity jurisdiction. *See* Dkt. No. 1.

Defendant L'Oreal USA S/D, Inc. ("L'Oreal") is a Delaware corporation with its headquarters in New York. SAC ¶ 4. Defendant Matrix Essentials, LLC ("Matrix") (initially sued as Matrix Essentials, Inc.) is organized under the laws of New York, with its headquarters in New York. *Id.* ¶ 5. Defendant Ulta is a Delaware corporation with headquarters in Illinois.[2] *Id.* ¶ 6.

Plaintiff contends that the Matrix Biolage Dry Shampoo contains flammable and combustible ingredients, such as propane and butane, "was prone to leak, rupture, and/or explode and thereby cause injury to a user of the product, or bystander near the product, when used, stored and/or handled in a foreseeable manner," and thus was "defective and unsafe in formulation, packaging, manufacture and/or design." *Id.* ¶ 20. Plaintiff also contends that "Defendants, and each of them, failed to reasonably and/or adequately notify, warn, label, instruct, test, manufacture, design and/or protect users of the product…." *Id.* ¶ 24.

Based on these facts, Plaintiff assets the following two causes of action against all Defendants: (1) Strict Products Liability, and (2) Negligent Products Liability.[3]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[2] The parties stipulated to Plaintiff's filing of the SAC to name Defendant Ulta Salon, Cosmetics, and Fragrance, Inc. as a Defendant and to dismiss without prejudice Ulta Beauty, Inc. *See* Dkt. No. 25. Plaintiff also corrected Defendant Matrix Essentials, Inc. to Matrix Essentials, LLC. *Id.*

[3] Plaintiff notes that the Defendants' 12(b)(6) motion to dismiss challenges only the strict products liability cause of action alleged in the First Cause of Action. *See* Mot. at 2 ("[Defendants] move the Court for dismissal of the First Cause of Action in the *Second Amended Complaint* ('SAC') filed by Plaintiff Linda Kuhn ('Plaintiff') for failure to state a claim for **strict products liability** upon which relief can be granted.") (emphasis added). The Court agrees, and this order only addresses the strict liability cause of action.

2

8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the Court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

## III. DISCUSSION

Defendants move to dismiss under Rules 8(a) and 12(b)(6). As an initial matter, Defendants contend that Plaintiff has failed to distinguish among the Defendants, and has instead grouped all three Defendants as an undifferentiated group for the strict products liability cause of action. Defendants also contend that the SAC lacks sufficient factual allegations to support a strict products liability claim under a design defect, manufacturing defect, or failure to warn theory. Specifically, Defendants contend that Plaintiff has failed to (1) identify the product's alleged

3

design defect, any manufacturing defect, or how Defendants failed to warn Plaintiff; and (2) indicate the theory (design defect, manufacturing defect, or failure to warn) under which Plaintiff brings the cause of action for strict products liability.

"California recognizes strict liability for three types of product defects—manufacturing defects, design defects, and warning defects (inadequate warnings or failure to warn)." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1154 (E.D. Cal. 2010) (citing *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 995 (1991) and *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1208 (2d Dist. 2006)). The Court addresses each in turn.

### A. Undifferentiated Pleading

As an initial matter, the SAC is insufficient because Plaintiff fails to distinguish among the Defendants. Instead, Plaintiff lumps L'Oréal and Matrix (the manufacturers) and Ulta (the retail location) in an undifferentiated group for its strict products liability cause of action. *See* SAC at ¶¶ 18, 20, 23, 24, 26. Federal Rule of Civil Procedure 8(a)(2) requires a short and plain statement of the claim to put Defendants on sufficient notice of the allegations against them. Fed. R. Civ. P. 8(a)(2). Courts in this District have concluded that "[u]ndifferentiated pleading against multiple defendants is improper." *Dunson v. Cordis Corporation*, No. 16-cv-03076-SI, 2016 WL 3913666, at *3 (N.D. Cal. Jul. 20, 2016) (granting motion to dismiss strict products liability claims and finding that, as an initial matter, the complaint was facially insufficient because it lumped both defendants together)[4]; *Corazon v. Aurora Loan Servs.*, LLC, No. 11-00542-SC, 2011 WL 1740099, at *4 (N.D. Cal., May 4, 2011) ("Here, Plaintiff simply refers to 'Defendants' in nearly all of her allegations …. By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because

---

[4] Plaintiff contends that the section of *Dunson* discussing undifferentiated pleadings "dealt with allegations concerning the fraud causes of action—which were subject to the heightened pleading standards under Rule 9, not Rule 8—and not the strict liability cause of action . . . ." Opp. at 12. The Court disagrees. Although part of the decision discussed Rule 9, nothing in the relevant excerpt of the *Dunson* court's reasoning as to undifferentiated pleadings addressed Rule 9 claims specifically. *See* 2016 WL 3913666, at *3 (in a nine-count complaint, noting that "as an initial matter, plaintiffs' FAC is facially insufficient because plaintiffs **consistently fail to distinguish among the defendants**.") (emphasis added). Regardless, as discussed, numerous courts that do not discuss Rule 9 come to the same conclusion as *Dunson*.

4

it fails to provide [Defendant] with fair notice of its alleged misconduct.") (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)); *see also Fagbohungbe v. Caltrans*, No. 13-cv-03801-WHO, 2014 WL 644008, at *3, n.4 (N.D. Cal. Feb. 19, 2014) (reasoning that a "general allegation regarding 'defendants' is [] insufficient on its face because it does not identify which specific defendants… . Plaintiff's complaint must differentiate between each of the defendants and clearly state the factual basis for each cause of action as to each specific defendant.").

Here, Plaintiff refers to "Defendants" in nearly all of her substantive allegations in support of the strict liability claim. For example, other than noting that the Matrix Biolage Dry Shampoo container was purchased at Ulta's retail location (*see* SAC ¶¶ 10, 22), Plaintiff has not differentiated the three Defendants with respect to the allegations in the SAC. SAC at ¶ 18 ("Defendants L'OREAL USA *S/D,* INC., MATRIX ESSENTIALS, LLC, ULTA SALON, COSMETICS, & FRAGRANCE, INC., and each of them, were in the business of and did manufacture, design, formulate, assemble, inspect, repair, maintain, endorse, test, franchise, supply, research, develop, sell, distribute, market and/or place into the stream of general commerce a certain container of Matrix Biolage Dry Shampoo, and/or its contents and/or component parts, that were ultimately involved in causing injury to Plaintiff LINDA KUHN on May 8, 2017."); *id.* at ¶¶ 20, 23, 24, 26.

For example, Plaintiff pleads no facts showing how each Defendant—including Ulta, a "retail facility"—was responsible for the design or manufacturing defects, or the failure to warn of them. Further, Plaintiff states that "[t]he contents and container of Matrix Biolage Dry Shampoo had been designed, tested, manufactured, assembled and formulated by Defendants L'OREAL USA S/O, INC. and/or MATRIX ESSENTIALS, LLC." SAC at ¶ 10. It is unclear from the SAC which Defendant, L'Oreal or Matrix (or both) manufactures, designs, tests, assembles, or formulates Matrix Biolage Dry Shampoo. *Id*. at ¶ 20 ("At the time said product left the hands of **Defendants, and each of them**, the certain container of Matrix Biolage Dry Shampoo, and/or its contents and/or component parts, contained flammable and combustible ingredients, such as propane and butane, and were **defective and unsafe in formulation, packaging, manufacture**

5

**and/or design** in that it was prone to leak, rupture, and/or explode and thereby cause injury to a user of the product, or bystander near the product, when used, stored and/or handled in a foreseeable manner.") (emphasis added).

Defendants, and the Court, should not be required to guess which allegations pertain to which Defendant. By failing to differentiate among the Defendants or specify which Defendant is the subject of Plaintiff's various allegations, the SAC violates Rule 8(a)(2) because it fails to provide each Defendant with fair notice of its alleged misconduct. *See In re Sagent Tech., Inc.*, 278 F.Supp.2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act.").

### B. Design and Manufacturing Defects

Under the design defect theory, a plaintiff must plead facts showing that the product is defective in one of two ways. Under the "consumer expectations test," a product's design is defective if it has failed to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner. And under the "risk-benefit test," a product's design is defective if the design embodies "excessive preventable danger," that is, the risk of danger inherent in the design outweighs the benefits of such design. *See Lucas*, 726 F. Supp. 2d at 1154 (citing *Barker v. Lull Engineering Co.*, 20 Cal. 3d 413, 430 (1978)).

Under a manufacturing defect theory, a plaintiff must plead facts showing that the product "is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line." *Lucas*, 726 F. Supp. 2d at 1154 (quoting *Barker*, 20 Cal. 3d at 429). The analysis "focuses on the 'result' of the manufacturing process—whether the product came off the production line defective in some way." *Dunson*, 2016 WL 3913666 at *6 (quoting *Schwartz v. Wright Med. Tech., Inc.*, 2014 WL 11320637, at *4 (C.D. Cal. Sept. 11, 2014)).

Defendants cite to several district court cases for the proposition that dismissal is appropriate because the contention that the container "and/or its contents and/or component parts" were defective is a conclusory and thus insufficient allegation. *See* Mot. at 4-7 (citing *Lucas*, 726 F. Supp. 2d at 1155 (taser device); *Altman v. HO Sports Co.*, No. 1:09-cv-1000 AWI SMS, 2009

WL 4163512 (E.D. Cal. Nov. 23, 2009) (wakeboard bindings)). Many of the cases Defendants cite involve general allegations of manufacturing defects in complex products. *See, e.g.*, *Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp*, No. 13-CV-0331-GPC-KSC, 2013 WL 4401437 (helicopter); *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1208, 1222-23 (C.D. Cal. 2010) (automobiles); *Nelson v. Matrixx Initiatives, Inc.*, No. C09-02904-WHA, 2012 WL 1831562, at *3 (N.D. Cal. May 18, 2012) (pharmaceuticals); *Currier v. Stryker Corp.*, No. 2:11-CV-1203 JAM-EFB, 2011 WL 4898501, at *3 (E.D. Cal. Oct. 12, 2011) (surgical implant); *Provencio v. Armor Holdings, Inc.*, No. CV-F-07-00651 AWI-TAG, 2007 WL 2814650, at *2-3 (E.D. Cal. Sep. 25, 2007) (rifles).

Plaintiff is correct that this case closely resembles this Court's recent decision in *Enea v. Mercedes-Benz USA, LLC*, No. 18-CV-2792-HSG, 2019 WL 402315 (N.D. Cal. Jan. 31, 2019). There, plaintiff alleged that sunroofs in certain Mercedes vehicles "were prone to spontaneously explode, shatter, or crack," that the sunroofs were "defective in their design and manufacture, as well as for their lack of warnings," and that "Defendants at all relevant times were aware of the defects." *Id*. at *1. Plaintiff in *Enea* "identifie[d] a single component (the sunroof), and allege[d] that that component will spontaneously explode." *Id.* Given that the sunroof was "a single component of the MB USA vehicles, and the alleged defect involve[d] a complete failure of that component," the Court found that plaintiff had "plausibly alleged facts sufficient to support a defect claim." *Id*. In denying the motion to dismiss, the Court noted that "[m]any of the cases Defendant cites involve general allegations of defects in complex machinery," making them distinguishable. *Id*.

Defendants attempt to distinguish *Enea* by claiming that unlike the plaintiff there, Plaintiff here points to the entirety of the accused product "and/or its contents and/or component parts." *See* Mot. at 5-6. Fundamentally, Defendants contend that because Plaintiff points to the bottle of Matrix Biolage Dry Shampoo "and/or its contents and/or component parts," the allegedly defective product here is less like the sunroof in *Enea* and more like an entire Mercedes.

The Court is satisfied that alleging the complete failure of an exploding Matrix Biolage Dry Shampoo bottle is sufficient to plausibly plead a claim for strict liability. Plaintiff identifies a

7

single product (the container of Matrix Biolage Dry Shampoo), and alleges that it or its contents can explode. *See, e.g.*, SAC at ¶¶ 20, 21, 23, 25. Plaintiff also contends that the Matrix Biolage Dry Shampoo contained flammable and combustible ingredients, such as propane and/or butane. *Id*. at ¶ 20. This is enough.

### C. Inadequate Warning or Failure to Warn

To state a claim for inadequate warning or failure to warn, a plaintiff must "identify which danger was not warned against, that the danger was substantial, that the danger was not readily recognizable to an ordinary consumer, that the manufacturer knew or should have reasonably known of the danger, and causation." *Altman*, 2009 WL 4163512, at *9 (citing *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 64-67 (Cal. 2008)). Under California law, manufacturers are strictly liable for injuries caused by their failure to warn of known or reasonably scientifically knowable dangers at the time they manufactured and distributed their product. *Johnson*, 43 Cal.4th at 64, 74; *Carlin v. Superior Court*, 13 Cal.4th 1104, 1108–09 (Cal. 1996). "Further, any claim for strict liability inadequate warning must include factual allegations that explain how the subject warning is inadequate." *Lucas*, 726 F. Supp. 2d at 1156 n.1. Whether a warning is adequate is generally a question of fact, *Schwoerer v. Union Oil Co.*, 14 Cal. App. 4th 103, 111 (Cal. 1993), which usually is left to the jury, *Jackson v. Deft, Inc.*, 223 Cal. App. 3d 1305, 1320 (Cal. 1990).

Plaintiff has adequately pled that Defendant failed to warn. *See* SAC at ¶ 24 ("Defendants, and each of them, failed to reasonably and/or adequately **notify, warn, label, instruct**, test, manufacture, design and/or protect users of the product…") (emphasis added.). Defendants argue that the SAC "does not identify how the warning was inadequate. That is, it does not identify which specific danger Defendants should have been warning against." The Court disagrees, and finds the allegation adequate at this stage. The SAC alleges that Defendant failed to warn consumers that the product, which contains propane and or butane, was highly prone to leak, rupture, and/or explode while it was unopened and used, stored and/or handled in a foreseeable manner. This is enough.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss First Cause of Action (Strict Products Liability) of the SAC is **GRANTED** with **LEAVE TO AMEND** for Plaintiff to differentiate the allegations by Defendant. *See Townsend v. Univ. of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008) ("Under Federal Rule of Procedure 15(a)(2), leave to amend shall be freely granted when justice so requires."). Any amended complaint must be filed within 28 days of the date of this Order. The Court further sets a telephonic case management conference for May 5, 2020 at 2:00 PM. The joint case management statement is due by April 28, 2020.

**IT IS SO ORDERED.**

Dated: 3/19/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

9